USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-12-17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SHAKIRA J. LORA,

                     **Plaintiff,**

            v.

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security,**

                    **Defendant.**

:     **REPORT AND**
:     **RECOMMENDATION**
:
:     **16-CV-3916 (PGG)(RLE)**

**To the HONORABLE PAUL G. GARDEPHE, U.S.D.J.:**

## I.    INTRODUCTION

*Pro Se* Plaintiff Shakira J. Lora ("Lora") commenced this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's ("Commissioner") final decision denying her claim for disability benefits. (Compl., Doc. No. 2). Lora argues that the decision of Administrative Law Judge Sheena Barr ("ALJ Barr" or "the ALJ") was erroneous and not supported by substantial evidence, and contrary to the law. (*Id.*). Lora also argues that a remand is necessary because she has three collections of documents that should be considered as new evidence. (*Id.*). The matter was referred to the undersigned on June 8, 2016. (Doc. No. 7).

On November 14, 2016, the Commissioner moved for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asking the Court to dismiss the Complaint. (Mem. of Law in Supp. of Commissioner's Mot. for J. on the Pleadings ("Comm.'s Mem."), Doc. No. 13, at 1). For the reasons that follow, I recommend that the Commissioner's motion be **GRANTED**.

## II.  BACKGROUND

### A.  Procedural History

On September 26, 2012, Lora applied for supplemental security income ("SSI") benefits, alleging disability as of April 1, 2009, because of anxiety and depression. (*See* Transcript of Administrative Proceedings ("Tr.") at 56). The Social Security Administration ("SSA") initially denied Lora's application on December 12, 2012. (Tr. at 66-68). Two hearings were held, one on May 14, 2014, and one on October 10, 2014. (Tr. at 25, 45). Lora and her attorney, William F. Henderson, were present at both hearings. (*Id.*). ALJ Barr issued an unfavorable decision on December 1, 2014, finding that Lora was not disabled within the meaning of the Act. (Tr.at 19). The Appeals Council denied Lora's request for review and the ALJ's decision became the Commissioner's final decision. (Tr. at 1). Lora then filed this action on May 24, 2016. (Compl. at 1).

### B.  The ALJ Hearing

#### 1.  Administrative Hearing Testimony and Other Sworn Statements on May 14, 2014.

The first ALJ hearing occurred on May 14, 2014. (Tr. at 45). ALJ Barr presided over the hearing with Lora and her attorney present. (Tr. at 49). In her preliminary statements, ALJ Barr stated that she had received only forty-eight pages of medical evidence and that thirty-five of those pages were received the morning of the hearing. (*Id.*). ALJ Barr stated that she would ask some questions to develop the record, but needed more information to have a full hearing. (Tr. at 48). Lora stated that she had been seeing her treating physician, Dr. Cueva, since 2010. (Tr. at 50). The ALJ indicated that she had only received records dating back to April 2013. (*Id.*). Before scheduling a date for another hearing, the ALJ informed Lora and her attorney that she would order an updated psychiatric examination and re-contact Dr. Cueva to get records prior to April 2013. (Tr. at 52).

### 2. Administrative Hearing Testimony and Other Sworn Statements on October 10, 2014.

#### a. Symptoms and Limitations

The second ALJ hearing occurred on October 10, 2014. (Tr. at 27). Lora was born on April 15, 1991, and at the time of the hearing was twenty-three-years-old. (Tr. at 29). Lora reports that she was diagnosed with generalized anxiety and mood disorder. (Tr. at 30). She oversleeps, constantly cries, and constantly changes appetite as a result of her condition. (Tr. at 32). Because of her condition, Lora does not "sleep a typical eight hours like most people" and indicates that "[o]n a bad day I've gotten up to 19 hours. On an okay day about 11, 12 depending." (Tr. at 33). Lora describes tasks such as brushing her teeth and showering as a "battle in itself." (Tr. at 34). She reports that she can take public transportation by herself on a good day, but on a bad day she needs her mother or brother because she becomes too nervous. (Tr. at 33, 196).

Lora describes her condition as "stress causing her to shut down and leads to anxiety and depression." (Tr. at 195). When she is depressed or anxious she states that she cannot focus or concentrate and does not talk very much. (Tr. at 193). Her ongoing anxiety causes her to have problems focusing sometimes and "the ongoing thinking is what causes [her] to fall back on the concentration." (Tr. at 38). She has suicidal ideations, but she does not know how often, perhaps "once every two months or so." (Tr. at 34). When Lora feels depressed, she "sleeps and cries all day" and these feelings of depression can last for days and weeks at a time. (Tr. at 185).

### b. Treatment

Lora was diagnosed with generalized anxiety and mood disorder by Dr. Cueva, who has been seeing her since 2011.[1] (Tr. at 30). Lora said that she has received taken Cymbalta (60mg) since 2009, Buspar (20mg) since about 2011, and Clonazepam as needed since about 2013. (*Id.*). Over the years Lora has had her medication increased and decreased, but there have been no recent increases. (Tr. at 36). In addition to the pharmaceutical treatment, Lora goes to individual counseling for 30-45 minutes every two weeks at the Promesa Clinic in the Bronx. (Tr. at 31).

### c. Daily activities

Lora lives with her mother and brother in the Bronx. (*Id.*). She graduated from high school and has an associate degree from LaGuardia Community College. (*Id.*). On a typical day, she "wakes up, brushes [her] teeth, showers, gets dressed, goes to class, come[s] home, eat[s], nap[s], eat[s], do[es] homework, shower[s], sleeps." (Tr. at 188). Lora uses foods that are "easily prepared," such as microwaveable food or soups, but is unable to do so when going through an episode. (Tr. at 189). She will go outside 3-4 times a week for class and "once a week or bi-weekly depending on her state" for therapy. (Tr. at 192). When she does go out, she mostly socializes with one friend during the week by going shopping. (Tr. at 39-40). When she is in a bad mood, however, she will not talk or socialize because her mood is "low and is suffering." (Tr. at 186).

### 3. Medical Evidence and Opinions

### a. Dr. Faiq Hameedi

On November 8, 2011, Lora went to Montefriore Hospital and Medical Center after complaining of "feeling depressed with low energy and that the 30mg of Cymbalta [was] not

---

[1] Lora testified at the first hearing that she had been seeing Dr. Cueva since 2010.

working." (Tr. at 252-53). She was seen by Dr. Faiq Hameedi. (Tr. at 252). Dr. Hameedi noted that there was no previous history of suicide or hospitalizations. (*Id.*). Dr. Hameedi further noted that Lora appeared well-groomed, cooperative, and calm without delusions. (*Id.*). Dr. Hameedi noted that Lora's mood was depressed, but her judgment remained intact and her insight seemed fair. (*Id.*). Lora's Global Assessment of Functioning[2] ("GAF") score was 59. (*Id.*). Dr. Hameedi diagnosed her with recurrent Major Depressive Disorder[3] in partial remission. (Tr. at 254). In response to Lora's prognosis, Dr Hameedi planned to increase her Cymbalta dosage to 60mg per day. (Tr. at 255).

### b. Dr. Fredelyn E. Damari

Dr. Fredelyn E. Damari, a psychologist, performed a consultative examination of Lora on November 28, 2012. (Tr. at 260). Lora indicated that she was unable to work because of depression and anxiety. (*Id.*). She told Dr. Damari that she loses her appetite, has crying spells, has hopeless thoughts, sleeps a lot, sometimes cannot get out of bed for a few days, and is irritable twice a month. (*Id.*). Lora stated that she has strong family relationships and friends although she would rather not socialize. (*Id.*). She reported that she is also able to independently dress, bathe, groom, and feed herself. (*Id.*).

---

[2] A Global Assessment of Functioning Score is assigned by mental health professionals when assessing a patient's mental functioning. The GAF is a scale from 0 to 100 where higher scores indicate greater levels of functioning. Optimal mental health and coping capabilities are represented by scores in the 91 – 100 range. A score of 61 – 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning. A score of 51 – 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* THE DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 28 U.S.C. § 309.81 (Am. Psychiatric Ass'n 4th ed.) at 34).

[3] "Major Depressive Disorder" is a disorder of mood characterized by a persistent dysphoria, anxiety, irritability, fear, brooding, appetite and sleep disturbances, weight loss, psychomotor agitation or retardation, decreased energy, feelings of worthlessness or guilt, difficult in concentrating or thinking, possible delusions and hallucinations, and thoughts of death or suicide. *See* MOSBY'S MEDICAL DICTIONARY (2009), http://medical-dictionary.thefreedictionary.com/major+depressive+disorder (last visited July 5, 2017).

Dr. Damari observed that Lora had a neat and appropriate appearance, calm demeanor, cooperative receptiveness to questions, good social skills, a goal directed and coherent thought process, and no evidence of hallucinations, delusions, or paranoia. (Tr. at 261-62). Dr. Damari wrote that Lora did not have a depressed affect or "dysthymic[4] mood." (Tr. at 262). After the assessment, Dr. Damari diagnosed Lora with Major Depressive Disorder and stated that she is impaired in adequately relating to others now or deal with stress. (Tr. at 263).

### c. Dr. Edwin L. Cueva

On April 3, 2013, Dr. Edwin Cueva conducted an initial evaluation of Lora and filled out a physician's functional assessment. (Tr. at 269-99). He initially described Lora as unstable and diagnosed her with generalized anxiety and mood disorder. (Tr. at 269). On April 12, 2013, Dr. Cueva found that Lora was cooperative, her affect was full, her speech was clear, her thought process was logical, and her insight and judgment were within normal limits. (Tr. at 270). Although Dr. Cueva described Lora's mood as anxious, he indicated that she was psychiatrically stable. (Tr. at 270-71).

In July of 2013, Dr. Cueva noted signs of improvement since the April 3, 2013 meeting and that Lora was in "good spirits." (Tr. at 273-74). He diagnosed Lora with mood disorder and generalized anxiety disorder. (Tr. at 280). In August 2013, Dr. Cueva indicated that Lora remains psychiatrically stable when taking Cymbalta, Buspar, Rispedal, and Clonazepam. (Tr. at 287).

In December 2013, Dr. Cueva stated that Lora "appears in good spirits, no major complaints except having her good and bad days…" (Tr. at 291). When Dr. Cueva next saw

---

[4] "Dysthymic" refers to symptoms of mild depression. *See Dysthymic*, DORLAND'S MEDICAL DICTIONARY FOR HEALTH CONSUMERS (2007), http://medical-dictionary.thefreedictionary.com/ dysthymic (last visited on July 5, 2017).

Lora on January 15, 2014, he noted that Lora had "only 1 panic attack in a few months" and "overall she shows improvement-support and encouragement given."

On April 14, 2014, in preparation for the ALJ hearing, Dr. Cueva filled out a "Psychiatric/Psychological Impairment Report" which indicated that Lora has had minimal response to treatment. (Tr. at 265). He spot checked boxes indicating Lora's signs and symptoms as: (1) anhedonia; [5] (2) appetite disturbance; (3) thoughts of suicide; (4) decreased energy; (5) generalized anxiety; (6) mood disturbance; (7) difficulty concentrating; (8) disturbances of mood or affect; (9) emotional isolation; (10) bipolar syndrome; (11) sleep disturbance; and (12) feelings of worthlessness or guilt. (Tr. at 266).

Dr. Cueva also indicated by checking boxes on the form that Lora has "marked difficulties" in maintaining concentration, persistence or pace, extreme difficulties in maintaining social functioning, and marked restrictions of activities of daily living. (Tr. at 267). Dr. Cueva indicated that Lora had three episodes of decompensation[6] within the past twelve months, each of at least a two-week duration. (*Id.*). He also indicated on the form that he anticipates Lora's impairments causing her to miss more than four days of work a month. (*Id.*).

### d. Dr. Lucy Kim

On July 18, 2014, Dr. Lucy Kim had a consultative examination of Lora. (Tr. at 300). Lora reported to Dr. Kim that she was currently taking 0.5mg of Clonazepam, 30mg of Cymbalta, and 10mg of Buspar daily. (*Id.*). Lora stated that she was able to cook, clean, do laundry, and go shopping by herself, but that her mother and her brother completed most of these

---

[5] "Anhedonia" is defined as the absence of pleasure from the performance of acts that would ordinarily be pleasurable. *See Anhedonia*, FARLEX PARTNER MEDICAL DICTIONARY (2012), http://medical-dictionary.the freedictionary. com/anhedonia (last visited July 5, 2017).

[6] "Decompensation" refers to the appearance or exacerbation of a mental disorder because of failure of defense mechanisms. *See Decompensation*, FAIRLEX PARTNER MEDICAL DICTIONARY (2012), http://medical-dictionary.threfreedictionary.com/decompensation (last visited on July 5, 2017).

activities. (Tr. at 302). Lora reported that her sleep and appetite are normal, but that she experiences mood swings and social withdrawal. (*Id.*).

In her assessment, Dr. Kim noted that Lora was responsive to questions and cooperative. (Tr. at 301). Lora appeared well-groomed and her appearance was neat and her speech and quality of voice were clear. (*Id.*). She was responsive to questions and cooperative. (*Id.*). Dr. Kim reported that Lora's attention and concentration were intact. (*Id.*) Lora was able to count, perform simple calculations, and count down by threes. (*Id.*) Lora's memory was intact and she was able to recall three out of three objects immediately and after five minutes. (*Id.*). She was able to repeat six digits forward and four digits backward. (*Id.*).

After assessing Lora, Dr. Kim stated that there was no evidence of limitations in following directions, performing simple independent tasks, maintaining attention, and being able to maintain a regular schedule. (Tr. at 302). Dr. Kim diagnosed Lora with Major Depressive Disorder, but stated that her condition does not appear to be significant enough to interfere with her ability to function daily. (*Id.*). Dr. Kim's plan for Lora was to continue her current treatment. (*Id.*).

### 4. Vocational Expert Testimony

Raymond Cestar, a vocational expert, testified on Lora's employment ability. (Tr. at 40). When asked if there were any employment opportunities for someone like Lora, Cestar said that Lora could be a housekeeper, a photocopying machine operator, or a kitchen helper. (Tr. at 41). Cestar reported that nationally there are 133,000 housekeeping jobs, 18,000 photocopying machine operator jobs, and 274,000 kitchen helper jobs. (Tr. at 41-42).

The ALJ posed hypotheticals to Cestar that included variances on Lora's abilities. (Tr. at 42-43). In hypothetical one, Cestar said the same employment opportunities existed for someone

like Lora who exhibited off-task behavior 5% of the time. (*Id.*). In hypothetical two, Cestar said that there was no sustainable employment for someone like Lora off-task 10% of the time. (*Id.*). In hypothetical three, Cestar said that there was no sustainable employment for someone like Lora and who needed limited or no interaction with the public, co-workers, or supervisors. (*Id.*). In hypothetical four, Cestar said there was no sustainable employment for someone like Lora who missed three or four days of work per month because of her condition. (Tr. at 43).

### 5. The ALJ's Decision

On December 1, 2014, ALJ Barr issued her decision, finding that Lora was not disabled under 42 U.S.C. §§ 416(i) and 423(d). (Tr. at 7). The ALJ applied the required five-step sequential analysis. 20 C.F.R. § 416.920(a)(4); (Tr. at 10-12). At step one, ALJ Barr found that Lora had not engaged in substantial gainful activity after September 26, 2012. (Tr. at 12). At step two, the ALJ considered the medical severity of Lora's impairment, finding that Lora's anxiety disorder and depressive disorder are severe impairments because they are vocationally significant limitations and last at the severe level for a continuous period of more than 12 months. (*Id.*); 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ concluded that Lora's clinical and laboratory results did not reveal a condition that was the same as, or medically equivalent to, any listing in Appendix 1 of the regulations. (Tr. at 16.); C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Lora has a mild restriction on activities of daily living; moderate difficulties on activities of social functioning; moderate difficulties on concentration, persistence, and pace; and no episodes of decompensation of extended duration. (Tr. at 12-14).

Continuing the analysis at step four, the ALJ found that there was sufficient evidence to support the finding that Lora retained the residual functional capacity ("RFC") to engage in performing simple, unskilled work in a low contact setting, meaning Lora is restricted to only

occasional interaction with the public, supervisors, and co-workers. (Tr. at 14); 20 C.F.R. § 404.1567. Moreover, the ALJ cited Lora's positive response to the treatment she received for depression and anxiety, specifically, Dr. Cueva's report that Lora was progressing well with medication and therapy. (Tr. at 11-12). When applying the treating physician rule, ALJ Barr gave "little weight" to Dr. Edwin Cueva's reports, which assessed Lora as "experienc[ing] marked to extreme [conditions] and also…three or more episodes of decompensation, consistent with a listing level psychiatric impairment." (*Id.* at 16.) Referencing Dr. Cueva's own treatment notes characterizing Lora as "remain[ing] stable," the ALJ concluded that Dr. Cueva's reports were "unsupported by the objective medical evidence." (*Id.*). The ALJ assigned "little weight" to the opinion of consultative psychologist Dr. Damari, noting that his opinion is primarily based on the claimant's own subjective complaints and are inconsistent with the objective medical evidence. (Tr. at 17). The ALJ assigned "great weight" to consultative examiner Dr. Kim, finding that her opinion was consistent with the consultative examination and with the objective evidence in the record. (*Id*). The ALJ found that Dr. Kim's conclusions were consistent with the claimant's "conservative course of treatment, her activities of daily living, which include interacting with her family, attending college, and traveling independent[ly]." (Tr. at 17).

The ALJ also found that Lora's testimony of functional limitation was not credible, as it was not supported by the objective clinical findings. (Tr. at 16.) To support this determination, the ALJ noted that Lora has not required extensive treatment for her alleged impairments and has experienced success through conservative treatment. (*Id.*). In addition, Lora's testimony evidenced her ability to perform several activities of daily living, which the ALJ found are inconsistent with the finding of disability. (*Id.*). The ALJ found that Lora's testimony of

attending college courses regularly, performing routine self-care activities daily, and socializing with friends is inconsistent with a finding of disability in this case. (*Id.*).

Finally, at step five, where the ALJ had the burden of demonstrating whether Lora was still capable of performing gainful activity that exists in the national economy, ALJ Barr found that jobs existed in the national economy in significant numbers that Lora can perform. (Tr. at 18); *see* 20 C.F.R. §§ 416.920(g), 416.969, 416.969a. The ALJ supported her finding with testimony from the vocational expert, Cestar and applied the vocational profile in Table No. 2 of Appendix 2 of the regulations. (Tr. at 18). The ALJ determined that Rule 202.21 applied to Lora, and thus, she was not disabled under the Act. (*Id.*), 42 U.S.C. § 423(a)(1); C.F.R. Part 404, Subpart P, Appendix 2.

## C. Appeals Council Denial of Review

On February 5, 2014, Lora submitted a request for review of the ALJ's decision to the Appeals Council. (Tr. at 5). In support of her petition, Lora did not submit any additional evidence for review. *Id.* The Appeals Council denied Lora's request for review on July 8, 2016, and the ALJ's decision became the Commissioner's final decision. (Tr. at 1).

## III. DISCUSSION

### A. Standard of Review

Upon judicial review, "[t]he of findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. §§ 405(g), 1383(c)(3). Therefore, a reviewing court does not determine *de novo* whether a claimant is disabled. *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *accord Mathews v. Eldridge*, 424 U.S. 319, 339 n.21 (1976) (citing 42 U.S.C. § 405(g)). Rather, the court is limited to "two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine

whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999) (citing *Johnson*, 817 F.2d at 986); *accord Brault*, 683 F.3d at 447. Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g). If the Commissioner's decision meets both of these requirements, the reviewing court must affirm; if not, the court may modify or reverse the Commissioner's decision, with or without remand. *Id.*

An ALJ's failure to apply the correct legal standard constitutes reversible error, provided that the failure "might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)); *accord Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g., Kohler*, 546 F.3d at 265 (regulation); *Schaal v. Callahan*, 933 F. Supp. 85, 93 (D. Conn. 1997) (SSR). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record to explain his reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 428 (N.D.N.Y. 2008) (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999)).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault*, 683 F.3d at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)); *accord Brault*, 683 F.3d at 447-48. The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the Commissioner's determination] is based." 42 U.S.C. §§ 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01 Civ. 1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded evidence typically requires remand). Eschewing rote analysis and conclusory explanations, the ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

## B. Determination of Disability

### 1. Evaluation of Disability Claims

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505, 416.905. A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505, 416.905.

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry: (1) determine whether the claimant is currently engaged in any substantial gainful activity; (2) if not, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities; (3) if so, determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled; (4) if not, determine whether the claimant possesses the RFC to perform his past work despite the disability; and (5) if not, determine whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520; *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999). While the claimant bears the burden of proving disability at the first four steps, the burden shifts to the Commissioner at step five to prove that the claimant

is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

The ALJ may find a claimant to be disabled at either step three or step five of the Evaluation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step three, the ALJ will find that a disability exists if the claimant proves that his or her severe impairment meets or medically equals one of the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant fails to prove this, however, then the ALJ will complete the remaining steps of the Evaluation. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(5), 416.920(e), 416.945(a)(5).

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §§404.1545(a), 416.945(a); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *see also* S.S.R. 96-9P (clarifying that a claimant's RFC is her maximum ability to perform full-time work on a regular and continuing basis). The ALJ's assessment of a claimant's RFC must be based on "all relevant medical and other evidence," including objective medical evidence, such as x-rays and MRIs; the opinions of treating and consultative physicians; and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1545(a)(3)); *see also* 20 C.F.R. §§ 404.1512(b), 404.1528, 404.1529(a), 404.1545(b).

In evaluating the claimant's alleged symptoms and functional limitations for the purposes of steps two, three, and four, the ALJ must follow a two-step process, first determining whether the claimant has a "medically determinable impairment that could reasonably be expected to produce [her alleged] symptoms." 20 C.F.R. §§ 404.1529(b), 416.929(b); *Genier*, 606 F.3d at 49. An ALJ should not consider whether the severity of an individual's alleged symptoms is supported by objective medical evidence. Social Security Ruling ("SSR") 16-3P, 2016 WL

1119029, at *3. Second, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c); see also 20 C.F.R. § 416.929(c); *Genier*, 606 F.3d at 49. The ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record. SSR 16-3P, 2016 WL 1119029, at *4-6. The evaluation of a claimant's subjective symptoms is not an evaluation of that person's character. *Id.*, at *1.

In making the determination of whether there is any other work the claimant can perform, the Commissioner has the burden of showing that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

## 2. Treating Physician Rule

The SSA regulations require the Commissioner to evaluate every medical opinion received. *See* 20 C.F.R. § 404.1527(c); *see also Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The opinion of a claimant's treating physician is generally given more weight than the opinion of a consultative or non-examining physician because the treating physician is likely "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (discussing the "treating physician rule of deference"). A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir.

2015) ("SSA regulations provide a very specific process for evaluating a treating physician's opinion and instruct ALJs to give such opinions 'controlling weight' in all but a limited range of circumstances.").

If the treating physician's opinion is not given controlling weight, the Commissioner must nevertheless determine what weight to give it by considering: (1) the length, nature, and frequency of the relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) the specialization of the physician; and (5) any other relevant factors brought to the attention of the ALJ that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(ii); *Schisler,* 3 F.3d at 567-69. The Commissioner may rely on the opinions of other physicians, even non-examining ones, but the same factors must be weighed. 20 C.F.R. § 416.927(e).

The ALJ is required to explain the weight ultimately given to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Greek,* 802 F.3d at 375 (citing *Burgess,* 537 F.3d at 129); *see also Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). Reasons that are conclusory fail the "good reasons" requirement. *Gunter v. Comm'r of Soc. Sec.,* 361 Fed. Appx. 197, 199-200 (2d Cir. 2012) (finding reversible error where an ALJ failed to explain his determination not to credit the treating physician's opinion). The ALJ is not

permitted to arbitrarily substitute his own judgment of the medical proof for the treating physician's opinion. *Balsamo*, 142 F.3d at 81.

Furthermore, an ALJ "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record," especially where the claimant's hearing testimony suggests that the ALJ is missing records from a treating physician. *Burgess*, 537 F.3d at 129 (quoting *Rosa*, 168 F.3d at 79); *Rosado v. Barnhart*, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003) ("[A] proper application of the treating physician rule mandates that the ALJ assure that the claimant's medical record is comprehensive and complete"). Similarly, "if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Hartnet v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998), *accord Rosa*, 168 F.3d at 79.

### 3. The Commissioner's Duty to Develop

The ALJ generally has an affirmative obligation to develop the administrative record. 20 C.F.R. § 404.1512(d); *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]"). Under the Act, the ALJ must "make every reasonable effort to obtain from the individual's treating physician ... all medical evidence, including diagnostic tests, necessary in order to properly make" a determination of disability. 42 U.S.C. § 423(d)(5)(B). Furthermore, when the claimant is unrepresented by counsel, the ALJ "has a duty to probe scrupulously and conscientiously into and explore all relevant facts . . . and to ensure that the record is adequate to support his decision." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999), citing *Dechirico v. Callahan*, 134

F.3d 1177, 1183 (2d Cir. 1998); *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir. 1996). Remand to the Commissioner is appropriate when there are "obvious gaps" in the record and the ALJ has failed to seek out additional information to fill those gaps. *See Lopez v. Comm'r of Soc. Sec.*, 622 Fed. Appx. 59 (2d Cir. N.Y. 2015), citing *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

**C. Issues on Appeal**

In her motion for judgment on the pleadings, the Commissioner argues that the ALJ's decision that Lora was not disabled is supported by substantial evidence and should be affirmed. (Doc. No. 13). Specifically, the Commissioner argues that Lora: (1) had the RFC to work at all exertional levels with certain non-exertional limitations; (2) offered testimony that was not fully credible; and (3) could perform work existing in significant numbers in the national economy. (*Id.* at ii). The Commissioner also argues that the new evidence submitted to the Court does not require remand to the Commissioner. (*Id.* at 20). Although Lora did not submit papers in opposition, an unopposed motion for judgment on the pleadings is not a default; rather the Court is required to examine the record as a whole to determine whether Lora has stated a plausible claim for relief. *Rivera v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 147454, *26 (S.D.N.Y. Oct. 30, 2015) (citing *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983)).

**1. The ALJ's Calculation of Residual Functional Capacity is Supported by Substantial Evidence**

The ALJ determines the residual functional capacity ("RFC") based on the totality of the evidence to the extent to which a claimant's impairments and related symptoms affect the capacity to perform any work-related activities. 20 C.F.R. § 404.1545. In making this determination, the ALJ "must weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole." *Gomez v. Comm'r of Soc. Sec.*, 16-CV-4251 (WHP)

(SN), 2015 WL 5000843, at *11 (S.D.N.Y. April 20, 2017). Certain evidence, such as a treating physician's opinion, is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to explain the weight ultimately given to the opinion of a treating physician. *Id.*

Here, ALJ Barr assigned "little weight" to Dr. Damari, "little weight" to Dr. Cueva, and "great weight" to Dr. Kim. (Tr. at 16-17). The ALJ justified assigning "little weight" to Dr. Damari because he did not do an independent analysis and instead relied upon the subjective statements of Lora. (*Id.*). A finding that a provider relied upon the subjective statements, rather than objective medical evidence, is good reason for the Court to give little weight to a physician. *See Gomez*, 2015 WL 5000843, at *1 (finding ALJ correctly applied little weight to physician's opinions when the physician reiterated plaintiff's subjective allegations and the opinion was inconsistent with other evidence on the record); *see also Carr v. Comm'r of Soc. Sec.*, 16-CV-5877 (VSB) (JCF), 2017 WL 1957044, at *10 (S.D.N.Y. May 11, 2017) (finding ALJ correctly applied little weight to physician when there were internal inconsistencies between observation notes and findings). Reciting Lora's statements, Dr. Damari stated that the claimant has "significant impairments" to maintaining a regular schedule contrary to the claimant's testimony that she regularly attends school. (*Id.*). Dr. Damari's findings that Lora was significantly socially impaired was also contradicted by his written observation notes, in which he states that Lora "had a neat and appropriate appearance, calm demeanor, cooperative receptiveness to questions, good social skills, a goal directed and coherent thought process, and no evidence of hallucinations, delusions, or paranoia." (Tr. at 261-62). Thus, Dr. Damari's inconsistencies

between his observations and findings, together with his reliance on Lora's subjective statements, are good reason to ALJ assign "little weight" to his opinion.

The ALJ justified assigning "little weight" to Dr. Cueva because his own treatment notes contradicted his opinion. (Tr. at 15). A treating physician's opinion that is contradicted by the record or substantial medical evidence is a valid basis for granting "little weight" to a treating physician. See Diaz v. Comm'r of Soc. Sec., 13 Civ. 7282 (JMF) (RLE), 2015 WL 1499488, at *12 (S.D.N.Y. Mar. 31, 2015) (finding ALJ properly assigned little weight to treating physician when reports and assessments in preparation for ALJ hearing were contrary to prior assessments). Since 2013, the time Dr. Cueva began seeing Lora, Dr. Cueva had not noted any episodes of decompensation, contrary to the psychiatric assessment form he filled out in preparation for the ALJ hearing. (Tr. at 267). In treatment notes throughout 2013 and 2014, Dr. Cueva stated that Lora remained stable, showed signs of improvement, and remained cooperative. (Tr. at 283, 291, 293). This is inconsistent with the psychiatric assessment form, in which he stated Lora showed "minimal response to treatment" and "extreme difficulties in maintaining social functioning." (Tr. at 265-67).

Prior to assigning "little weight" to Dr. Cueva, in accordance with case law, the ALJ attempted to clarify the record and the inconsistencies Dr. Cueva provided. See Burgess, 537 F.3d at 129; see also Hartnet, 21 F. Supp. 2d at 221. An ALJ cannot reject a treating physician's diagnosis without first attempting to fill gaps in the record. See Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999). "If an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." Id (citing Harnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (internal citations omitted)). Where there are clear inconsistencies in the

record, the duty to develop the record exists even when the claimant is represented by counsel. *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996). "The regulations also state that, '[w]hen the evidence we receive from your treating physician ... or other medical source ... is inadequate for us to determine whether you are disabled ... [w]e will first recontact your treating physician ... or other medical source to determine whether the additional information we need is readily available.'" *Id* (citing 20 C.F.R. § 404.1512(e)); see also *Casino-Ortiz v. Astrue,* 06 Civ. 155, 2007 WL 2745704, at *7 (S.D.N.Y. Sept. 21, 2007) (finding ALJ took proper steps to develop record by requesting missing information and ordering consultative examination); *see also Sweeney v. Barnhart,* 472 F.Supp.2d 336, 347 (E.D.N.Y.2007) (refusing to remand for failure to develop the record where "[t]he ALJ properly requested relevant medical records and ordered a consultative exam when it was apparent that the available records in the case were sparse").

The record demonstrates that ALJ Barr took reasonable steps to develop the record. On May 14, 2014, Lora appeared before ALJ Barr for a hearing. (Tr. at 45). At the hearing, ALJ Barr requested further medical documentation from Lora and her attorney, William F. Henderson, before she did an extensive questioning of Lora. (Tr. at 48-49). ALJ Barr only received forty-eight pages of medical evidence, and stated that there "has to be more medical [evidence] that is either outstanding or something. [Dr. Cueva] is saying that [Lora] has all these episodes of deterioration, which basically means that there should be a psych hospitalization somewhere in the file but I don't have any evidence of that either." (Tr. at 49). During the questioning of Lora, ALJ Barr brought to Lora's attention that the records they currently have from Dr. Cueva only go back to April of 2013, even though Lora alleged that she began seeing Dr. Cueva as early as 2010. (Tr. at 51); *Burgess,* 537 F.3d at 129.

Before adjourning, ALJ Barr explicitly addressed the issue of the record and stated that she would "re-contact Dr. Cueva to get records going back further from April 2013." (Tr. at 52). The ALJ took multiple steps to ensure the completeness and thoroughness of the medical record. First, the ALJ informed both Lora and Henderson that there were gaps in the record based on the testimony of Lora and the psychiatric form filled out by Dr. Cueva. (Tr. at 48-49, 52). Second, the ALJ also re-contacted Dr. Cueva and left a voicemail on August 19, 2014, and September 4, 2014, regarding the status of the subpoena for more medical records. (Tr. at 250-51). Third, in order to further develop the record, the ALJ ordered Lora to go for a consultative examination with Dr. Kim. (Tr. at 53). As in *Casino-Ortiz* and *Sweeney*, the ALJ fulfilled their duty to develop the record by requesting medical information from the treating physician multiple times and ordered a consultative examination. Thus, the ALJ made reasonable efforts to develop the record and resolve inconsistencies by re-contacting Dr. Cueva, informing Lora, and ordering her to another consultative examination. 42 U.S.C. § 423(d)(5)(B); *Lopez*, 622 Fed. Appx. at 59. The ALJ took definitive affirmative actions to clarify Dr. Cueva's provided medical reports and, thus, the ALJ gave good reason for assigning "little weight" to Dr. Cueva's opinion based on the objective medical evidence in the record.

The ALJ ultimately gave "great weight" and relied on the findings of Dr. Kim, the consultative examiner, who assessed Lora on July 18, 2014, in preparation for the ALJ hearing. (Tr. at 16). Dr. Kim's findings were consistent with Dr. Cueva and Dr. Damari, but differed in the conclusion and found that there was no evidence that Lora's condition was significant enough to interfere with daily functioning. (Tr. at 302). The ALJ explained that this finding is consistent with Dr. Cueva's treatment notes and both Dr. Damari's and Dr. Cueva's observations. (Tr. at 16). Although Dr. Kim only examined Lora once, the ALJ explained that

Dr. Kim's conclusions are consistent with the "claimant's conservative course of treatment and her activities of daily living, which include interacting with her family, attending college, and traveling independent[ly]." (Tr. at 17). Thus, here there is no legal error because the ALJ properly evaluated the consistency of the physicians' opinions with the evidence on the record and provided good reasons for the ALJ' s determination. (Tr. at 15-17); *see also Velez*, 2015 WL 8491485, at *11.

### 2. The ALJ Properly Assessed Lora's Testimony as not Fully Credible Based on Substantial Evidence

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49. The ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms which, if not substantiated by objective medical evidence, must rely on a finding of credibility. 20 CFR S 404.1529. When the ALJ gives specific reasons for finding the claimant not credible, the ALJ's credibility determination is generally entitled to deference on appeal when record-based reasoning is specified. *See e.g., Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (citing *Calabrese v. Astrue*, 358 Fed.Appx. 274, 277 (2d Cir. 2009) (summary order)); *Stanton v. Astrue*, 370 Fed.Appx. 231, 234 (2d Cir. 2010) ("We have no reason to second-guess the credibility finding in this case where the ALJ identified specific record-based reasons for his ruling."); *Rosario v. Astrue*, 12 Civ. 3594, 2013 WL 3324299 at *8 (S.D.N.Y. June 25, 2013) ("Here, the ALJ's determination of plaintiff's credibility is set forth with 'sufficient specificity.")

Here, the ALJ properly determined that Lora's testimony was not fully credible and cited specific record-based reasoning to justify that determination. (Tr. at 16). The ALJ noted that Lora stated that on some days she can't get out of bed, which makes it difficult to get a job.

(*Id.*). Lora's actions, however, demonstrate that she could maintain a regular schedule as evidenced by going to LaGuardia Community College and obtaining her Associate Degree. *Compare* (Tr. at 33) *with* (Tr. at 29). Contrary to Lora's testimony, the ALJ specified that Lora maintained a schedule of going to class 3-4 times a week and received her Associate Degree in July 2013. (Tr. at 278). The ALJ also noted that the medical evidence, including Lora's mental status examinations in which she exhibited mild to moderate signs of symptoms, including improvements in status, also diminished Lora's credibility. *See* 20 C.F.R. § 416.929(c)(2); (Tr. at 270, 290-91, 296, 301). While Lora may have subjective complaints of great depression and pain, the ALJ notes that her subjective complaints are not supported by her most recent treatment notes and current treatment. (Tr. at 16). Thus, the Court finds no error and defers to the ALJ's specified reasoning as to why Lora's testimony was not fully credible.

### 3. The ALJ Determined That Lora Could Perform Work Existing in Significant Numbers in the National Economy Based on Substantial Evidence

At step five, the Commissioner has the burden to "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); 20 C.F.R. § 404.1569a. In doing so, the ALJ is required to consult a vocational expert when a non-exertional impairment has "any more than a 'negligible' impact on a claimant's ability to perform a full range of work." *Selian*, 708 F.3d at 421; *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (ALJ required to consult vocational expert where claimant has significant non-exertional limitations).

In the opinion, ALJ Barr determined that Lora is "limited to performing simple unskilled work in a low contact setting, meaning [Lora] is restricted to only occasional interaction with the

general public, supervisors, and coworkers. [Lora] is limited to performing low stress positions, which is defined as having only occasional decision making required and occasional changes in the work setting." (Tr. at 14). Upon this finding that Lora has certain non-exertional limitations, ALJ Barr consulted with a vocational expert to determine if substantial employment opportunities existed for some one of Lora's ability. (Tr. at 41); *Selian,* 708 F.3d at 421. Mr. Cestar, a vocational expert, identified three jobs that someone in like circumstances as Lora could do, including (1) a housekeeper (DOT#: 3236870140), (2) a photocopy machine operator (DOT#:207.685-014), and (3) a kitchen helper (DOT#:318.687-010). (Tr. at 41-42).

At the hearing, the ALJ posed several hypotheticals to the vocational expert that reflected Lora's residual functional capacity. (Tr. at 42-43). Even though the vocational expert did say that no jobs existed in significant numbers in which someone would miss work for four or more days a month, the ALJ appropriately utilized hypotheticals that were supported by the substantial evidence. *See Mancuso v. Astrue*, 361 Fed.Appx. 176, 179 (2d Cir. 2010) ("The [claimant's] argument [that the hypothetical provided to the vocational expert failed accurately to reflect her impairments] fails because the ALJ's hypothetical mirrored the claimant's residual functional capacity, which ... was supported by substantial evidence in the record."); *see also Maldonado v. Berryhill*, 16-CV-165 (JLC), 2017 WL 946329, at *28 (S.D.N.Y. Mar. 10, 2017). The determination that Lora would miss more than four days of work is inconsistent with the objective findings and Lora's testimony that she regularly attends class three-four days a week, similarly to the schedule expected of an employee. Like *Mancuso*, the Commissioner, instead of relying on posed hypotheticals based on unsubstantiated evidence, properly relied on the opinion of the vocational expert that reflected the residual functional capacity of Lora. *See* (Tr. at 18);

*Mancuso*, 361 Fed.Appx. at 179. Thus, the ALJ did not err and demonstrated that work exists in significant numbers in the national economy for Lora.

### 4. The Three Additional Documents Lora Submitted Do Not Require Remand to the Commissioner

When new evidence is offered, the Court must look at whether the evidence is "new" and "material." *Lisa v. Secretary of HHS*, 940 F.2d 40, 43 (2d Cir. 1991). The claimant must also show good cause for failing to present the evidence earlier. *Id.* Evidence is considered material when it is "relevant to the claimant's conditions during the period for which the benefits were denied" and there must be a "reasonable possibility that the new evidence would have influenced the [Comissioner] to decide claimant's applications differently." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988).

Here, Lora offers three documents to the Court. (Compl. at 23-31). One document is Dr. Cueva's April 2014 psychiatric/psychological impairment report, which was already contained in the record and analyzed in the ALJ's report. *See* (Tr. at 16, 265-68); (Compl. at 26-30). This document is not new and is not evidence that would require remand. *Lisa*, 940 F.2d at 42. The second document is a November 2015 notice of exemption from temporary assistance work requirements. (Compl. at 31). This November 2015 notice is nearly a year after the ALJ's December 2014 decision, making it apparent that the newly proffered evidence is not material because it was not relevant to Lora's conditions during the period for which benefits were denied. *See* (Compl. at 31); *Tirado*, 842 F.2d at 597.

The third submitted document is Dr. Cueva's psychological report on Lora from March 5, 2013. (Compl. at 23-25). In the March 2013 report, Dr. Cueva states that Lora's abilities that

are "seriously limited, but not precluded"[7] include the following: "remembering work-like procedures, understanding short and simple instructions, carrying out very short and simple instructions, maintaining attention for two hour segments, maintaining regular attendance and punctuality within customary tolerances (these tolerances are usually strict), sustaining an ordinary routine without special supervision, making simple work-related decisions, completing a normal workday without interruptions from psychologically based symptoms." (Compl. at 24-25). Dr. Cueva also stated that Lora is unable to meet the competitive employment standards when it comes to "understanding detailed instructions, carrying out detailed instructions, dealing with stress of semi-skilled and skilled work, responding appropriately to persons in authority, maintaining socially appropriate behavior, traveling to unfamiliar places, and using public transportation." (Compl. at 25).

The March 2013 report is not only duplicative of the April 2014 one, but it also contains evidence that further contradicts Dr. Cueva's other observations, Dr. Kim's observations, Dr. Damari's observations, and Lora's own testimony. *Compare* (Compl. at 23-25) *with* (Compl. at 26-30). For example, all three doctors describe Lora as having socially adequate skills, while Dr. Cueva's report states that Lora is unable to "maintain socially appropriate behavior." *Compare* (Compl. at 25) *with* (Tr. at 267). Lora also stated that she can use public transportation and keeps a regular schedule by going to school, having earned her Associate Degree at LaGuardia Community College, furthering contradicting Dr. Cueva's observations that Lora is unable to "maintain regular attendance, sustain an ordinary routine without special supervision, or use public transportation." *Compare* (Tr. at 31, 33) *with* (Compl. at 24-25). Thus, Dr. Cueva's

---

[7] "Seriously limited, but not precluded" means ability to function in this area is seriously limited and less than satisfactory, but not precluded. This is a substantial loss of ability to perform the work related activity. *See* (Compl., Doc. No. 2, at 25).

report would not have resulted in a different outcome for Lora's case and is therefore not material. Accordingly, I find that remand for purposes of considering these documents is unnecessary.

## IV. CONCLUSION

For the reasons set forth above, I recommend that the Commissioner's motion be **GRANTED** and that the case be **DISMISSED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Such objections shall be filed with the Clerk of Court and Served on all adversaries, with extra copies delivered to the chambers of the Honorable Paul G. Gardephe, 40 Foley Square, Room 2204, and to the chambers of the undersigned at 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: September 12, 2017**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**MAILED BY CHAMBERS**